Good morning, your honors. May it please the court, Henry Cruz for the petitioner, Concepcion Carrillo, and I will attempt to reserve a few minutes for a rebuttal. In 1996, Congress amended the Immigration and Nationality Act by making permanently inadmissible aliens who had previously, who had, who had illegally reentered the United States after having been previously deported. In that same legislation, Congress created an exception to that permanent ground of admissibility with two requirements. One is that the alien must be seeking admission more than 10 years after her last departure. And two, that the alien must obtain consent to reapply for admission from outside the United States. The second requirement is what's commonly known as the I-212 waiver. Now here, the board found that my client satisfied the first requirement, but did not satisfy the second because she is currently inside the United States. The board found that the plain language of the statute requires her to seek the waiver from outside the United States. But the board has consistently applied, pursuant to its general powers, a longstanding administrative practice of granting such waivers, nunk-pro-tunk, to aliens inside the United States. Can you help me with something, counsel? I appreciate what you're saying, but the whole concept of nunk-pro-tunk is that a court has, or somebody has made a ministerial mistake, and it's corrected because it's a ministerial mistake. In this case, however, a statute says what has to happen. How can a statute be overridden, whatever the practice has been, because of a ministerial error? Your Honor, I have a few responses. One is the court must understand the nature of the agency's nunk-pro-tunk power. It's not the same as a court's nunk-pro-tunk power, which, as Your Honor stated, usually is just to correct ministerial errors. However, as been indicated in some of the case law that we've cited from other circuits, such as Patel out of the Sixth Circuit and Edwards out of the Second, this and Romero-Rodriguez out of the Fifth, the agency's nunk-pro-tunk power is broader, and it has been consistently applied to... And what's the statutory or regulatory basis for that nunk-pro-tunk power? Yes, Your Honor. It's out of the board's general powers, which comes from the statute under 8 U.S.C. 11... So this is in the nature of an equitable reservoir of power that the agency has, which, in your mind, can override the express language of a statute. Well, Your Honor, I don't think they're overriding the express language of the statute. I think it's still within their power. Help me with this. The statute says you've got to apply from outside the United States. You have to be out there to do that. You have to be out for 10 years. If the agency interprets the law in a way that renders that a nullity, that's a pretty serious thing, isn't it? Well, Your Honor, the agency has interpreted the same language that we're looking at here for almost 70 years in the same way... We're not going to let anybody in from X country because we've got too many people here already, and the agency says, you know, we really like those people. So we're going to let in 100,000 people based on our nunk-pro-tunk powers. Is that okay? Well, Your Honor, I think that we have to take into context, as I was trying to explain, the agency's prior practice, because Congress enacted this statute in 1996, but it provided the same language. And it was deemed to be aware of this prior administrative practice of providing this discretionary nunk-pro-tunk power. So, in effect, because Congress is deemed to be aware, whatever it says to the contrary doesn't mean anything in the statute? Well, Your Honor, the Congress has said the same thing that it's said before in other statutes. And so if the agency has been interpreting that statute in a way that permits their nunk-pro-tunk power, and Congress passes this statute... It isn't exactly, we're using nunk-pro-tunk, but what the regulation actually says is that if you file the 212 waiver in conjunction with an application for adjustment of status, the approval is deemed to have approved of you at the date on which you embarked for the United States from outside the United States. So it's not exactly nunk-pro-tunk, but it's the grant of consent in a retroactive fashion, which is a little different maybe. Yes, Your Honor. Well, I believe the language has consistently been used as nunk-pro-tunk synonymously with retroactive. It basically is stating that they're approving the waiver at the time that it should have been obtained prior to the aliens entering the United States. Counsel, why couldn't Congress have said that in their statute when they enacted it? Well, and that's a good point, Your Honor. Again, this is a longstanding administrative practice, almost 70 years. Congress certainly knew about it, and the case law says that they're deemed to be aware of this. And if they wanted to disapprove of this practice because they thought that the board has been consistently overriding their intent under the same language, then they would have stated this. And I think that simply making any negative inferences that they have disapproved of this isn't enough, especially in light of the longstanding practice that the agency has had. So then what was the point? What was the point of Congress enacting 9Ciii? I mean, why say that if they didn't mean it, that they didn't expect that that would be enforced? Then why would they enact that statute? Well, Your Honor, I think the waiver is the exception is still enforced. The alien still has to meet the 10-year waiting period. And Congress intended that ground of admissibility to be a harsher penalty for multiple immigration violations, and that's where the 10-year waiting period comes into play. Because once you take that 10-year waiting period out, then all you're left with is the same type of waiver that's under 212a9a. But the problem is that that statute says that you have to be outside of the United States prior to the Secretary of Homeland Security having consented to your reapplying for admission. Yes, Your Honor. That's pretty clear, isn't it? Well, Your Honor, that is clear. And the statute language in other sections was also clear. It was the same language used as before. But the board, the agency, has interpreted that language to permit it to use its non-proton power. But should we give deference to the agency in the way it's interpreting its regulations or interpreting the statute, even though it may be contrary to the specific language of the statute? Well, Your Honor, I think that where the agency has done this for almost 70 years, and Congress says nothing about it when they pass the same language, I think the court should give deference to that practice. This really allows someone who does this, puts them in a better position than somebody who follows the rules because they try to do it prospectively. They couldn't get it under these circumstances. But they do it the way you're talking about, then they get it. So basically, it gives a, in quotes, law breaker, a rule breaker, a better shake than somebody who follows the rules, and it applies in the face of an express statutory requirement. Well, Your Honor, the agency has consistently given these sort of discretionary practices to the way that... You're not answering my question. You're just saying this is what they've been doing, so whether it makes any sense or not, we should follow that. Well, no, Your Honor. I think that the way that the agency has exercised this is very limited, and it's not going to... Do you agree that had your client followed the normal procedures that... I can't remember, this is Concepcion, so it's she, that she would have been able to get in in the way that she's talking about if she followed the normal rules? Yes. In the way she's done here? If she had followed the rules and stayed outside... If she followed the rules instead of relying on nunk-pro-tunk, would she have been able to get the benefit that you're talking about? Yes, Your Honor. She would have been able to obtain an I-212 waiver from outside the agency. But she wasn't outside, was she? Well, no, not now she's not. You're asking if she had followed the rules by staying outside. I'm perhaps asking the question inarticulately. My point is it seems to me that if your client had tried to do this in the, in quotes, prescribed way, she would not be able to do what she's doing, and yet she claims she's entitled to it through the use of the, in quotes, nunk-pro-tunk power. Well, Your Honor, I guess what I can say is that it's not so much that she's entitled to it. The board has exercised this discretion. If the board wants to provide an exception in these cases for whatever reason, the board has the discretion to do that. All right. But the fact is that the board in its decision here did not provide any reasoning on that matter. All it said was that this is what the language says, and therefore. Well, let me. I'm sorry. Go ahead. No, I'm sorry. Well, but in essence what you're saying is that in some cases the agency says, we're going to excuse you from complying with the specific language of 1182-9C-II-I. And in some cases they don't. And this is a case where they said we're not going to excuse you from that, right? That's correct, Your Honor. So isn't that within the agency's powers as well to make that decision? Yes, Your Honor. And they have provided limited exceptions to that under two circumstances, where, one, it would completely dispose of the case where all grounds of removability would be waived with a non-proton grant, or, two, the non-proton grant would permit the alien to seek adjustment of status in conjunction with any appropriate waivers. And my client's case falls under the second exception. So, again, it's very limited. It's not as broad as it may seem, and the board's longstanding precedent has applied this in a very limited fashion. And my client's case does fall under this, and I see that I am out of time. Yeah, but I have a question for you. It is ‑‑ I share the somewhat ‑‑ the confusion because I read, I think it's in the matter of SN, which is the 1954 case, and some other older BIA decisions which seem to suggest, just like the regulation, that retroactive approval is possible. But why can't the agency change its interpretation of the statute, and why can't it do so in this case? In other words, you know, regardless of how the interpretation went in the past, can the agency not relook at it and say, well, you know, maybe that was an okay interpretation, but we think a better interpretation is a stricter interpretation, and here we are. And if they've done that, why don't we have to now defer to this interpretation? Your Honor, because the board is certainly free to do that, but here that's not what the board did. The board simply stated, looking at the same language, that it has consistently applied its power previously, said that because that language says they must seek it from outside the United States, then we can't grant it. But that's the same thing that was said before. The language is the same thing. No, it doesn't, it doesn't, because what they're, if I'm remembering this, you know, I didn't just read this moments ago, but it seemed to me that what the board did say in this case is, look, now the statute contains a specific opportunity for a waiver, which is denominated a waiver, under the Violence Against Women Act provisions. And so maybe Congress is telling us that that's the only situation in which a waiver of these other provisions is available, so now we're going to be more strict. So there is some reasoning, it seemed to me, that kind of explains or maybe explains this changing course. Well, Your Honor, the board was looking at, in the context of the regulations at 212.2, our argument is not simply limited to the board's authority under those regulations. It has this long history of case law. Well, I know that, but it can change its case law, too. That's my point, I guess, my concern. That's certainly correct, Your Honor. But in terms of the VAWA Reauthorization Act, Congress didn't actually specifically limit the agency's authority to grant these waivers. In VAWA cases, the language I believe they used was that it can particularly use that power. But in the first general description of the law, it stated that the Attorney General, among others, still has the authority to grant these waivers under those regulations at 212.2, and it wasn't limiting it to VAWA applicants. It just stressed, in particular, the Attorney General should consider VAWA applicants under those regulations. If there are no further questions, I'll... Yes, and we'll give you some rebuttal because we've taken up a lot of your time, too. Good morning. May it please the Court. Attorney Sabatino F. Leo on behalf of the Attorney General of the United States, Eric H. Holder, Jr. In this particular case, there's simply one issue at bar, and that's whether 8 U.S.C. 1182.89c precludes the petitioner, who is unlawfully present in the United States, from seeking a waiver of admissibility pursuant to the exception, under that statute, from inside the United States. It is uncontested in this particular case that following an expedited removal order, the petitioner here illegally reentered the United States and has remained here in such fashion since 1998. This act alone, pursuant to 8 U.S.C. 1182.89, renders her inadmissible as an alien previously ordered removed, who then reenters, or attempts to reenter, without being admitted. So, she is forced to find an exception. And what petitioner has attempted to do is misconstrue, or what the petitioner has done in this particular case, has misconstrued 1182 to allow her to apply for that exception under 8 U.S.C. 1182.89 from within the United States. Well, let me ask you. I'm going to start with the fact that there is a statute permitting adjustment of status for an alien who is physically present in the United States, if they're the beneficiary of the appropriate visa. So, she can apply for adjustment of status from within the United States, right? Ordinarily. A person can do that from within the United States. And I was particularly struck with the BIA's concession in this case, that she needs the 10-year minimum requirement of the act, and that the only problem is that she's applying within the United States. That seems to be the only thing they're hanging their hat on in this case. Am I right about that? Oh, that is correct, Your Honor. That is exactly what the BIA determined in this particular case. Okay. So, that struck me as extremely odd, because one could say that she doesn't have the 10 years because she wasn't outside the United States for the 10 years, because she was here and then left and came back. That is correct, Your Honor. But she wasn't gone for 10 years. So, the BIA has interpreted the 10 years merely to be 10 years since the last departure wherever you happened to be. Yes, Your Honor. And went on to conclude that. Well, I'm not ready to go on yet. I want to say, is that the statutory interpretation that we must give? You're asking us to give deference to the BIA here. So, do we defer to that interpretation, that the 10-year requirement is just 10 years elapsing since the last departure, regardless of where you spend that 10 years? I think the language of the statute in and of itself states unequivocally that you must have remained outside of the United States. That's not what the BIA says here. I do concede that fact, Your Honor. Okay. So, we're stuck with the BIA perhaps formerly having misread the statute to allow what we're calling non-proton approval of an application, but yet now we're saying, okay, never mind how the statute reads. We're allowing the 10 years to elapse no matter where you are. I find it really very frustrating, just speaking only for myself here, obviously, that the BIA's analysis in all these cases seems very cursory. Can I just ask an adjunct question to what Judge Graber has asked, that the board cites Barham-Garcia v. Comfort for the effect that the waiver under 212 and so on of the act can only be obtained after exiting the country and waiting 10 years. Can the BIA apply non-proton privileges to its miscitation of the 10-year factor? No, I don't believe so, Your Honor. So, basically, even though it says something different on one part, it's stuck by whatever it says in its earlier part of the opinion. I believe that one particular sentence where it does concede the 10-year issue is, in fact, what the BIA concluded in that particular situation, Your Honor. Sorry to have interrupted. Well, you know, I guess the earliest case that I could find was in the matter of SN, which appeared in 1954, and it described the practice of the board at that time to grant permission to reapply non-proton for aliens who have been arrested and deported unless prior to their embarkation or re-embarkation at a place outside the United States, and I'm leaving out some words, the Attorney General has consented to their applying or reapplying for admission. So that's the same statutory phrasing that we have now. And the board said, sure, we can do that non-proton, and it seems like it's been done ever since in some form or another, and it's even provided for in the regulations. And my concern with what the BIA has said here in this case is that they really, to my mind, haven't explained how they changed course, why they changed course, or how this even fits in with the regulation. Well, if I may, Your Honor, in 1996, Congress acted explicitly with regard to recidivist aliens, and in this particular case, an alien that has previously been removed who subsequently reenters the country. With regard to 212E and 212I2, those regulations actually antedated this particular statute. And if you read those regulations, just those regulations in and of themselves, it does appear to imply retroactivity with regard to. My problem is this, the exact statutory wording that gave rise to that regulation and gave rise to this 1954 decision and some other ones later than that, they deal with the exact statutory wording that Congress has used again in this context. But I guess I'm left unsatisfied by the board's explanation as to why this time the exact same words mean X where previously those words meant Y. Well, I think in this particular concept, Your Honor, the board understood what Congress's intent was in 1996 and further understood that subsequent to the 1996 statutes, that Congress did in fact amend and actually enact other statutes, the Life Amendments, the Haitian Relief Act Amendments, as well as the Nicaraguan Adjustment and Central American Relief Act, which permitted explicitly certain immigrants eligible for adjustment of status despite having been previously removed, and accomplished this by stating the attorney general may grant the alien a waiver on the grounds of inadmissibility under subparagraphs A and C of 1182.89. I submit to this court at this time, Your Honors, is that if that previous language was so clear or meant to say what in fact Brother Counsel is attempting to say, that that language would be unnecessary. And additionally, Your Honor, with regard to the Nicaraguan and Cuban nationals, it provides yet more support for this reading. They establish a special rule for a waiver of inadmissibility grounds for NACARA applicants under 1182.89A and 1182.89C, under which these applicants for adjustment of status may apply for a waiver of these grounds of inadmissibility while present in the United States. They specifically use this language at 8 CFR section 245.13 Charlie 2 as a special rule. And I submit to this court at this time, if it was to mean what Counsel is saying in this particular case, would there be any need to now subsequently amend the statutes in the late 1990s and in the year 2000? And if I may continue just briefly with regard to Judge Graber's comment with regard to the Violence Against Women's Act. Although I concede that Brother Counsel, the language, the inclusion of the word particularly means Congress wanted particular attention paid to VAWA 813 Bravo, what Congress in fact did was place an exception within 1189A2. And specifically saying that under 1189, strike that, 8 USC 1182.89C III, the Secretary of Homeland Security may waive the application of Clause I in the case of an alien who is a VAWA self-petitioner if there is a connection between the alien's battering or subjection to extreme cruelty and the alien's removal or departure from the United States. One of the many frustrations I have is that frequently what is called in the statute an exception is referred to as a waiver and they are not the same thing. What you're talking about is a waiver because it's called a waiver and it says the Secretary may waive in certain circumstances. But Clause I, the exception doesn't require the consent of the Secretary except as it applies to the alien's decision to reapply for admission. In other words, it's not a waiver. It doesn't apply in certain circumstances if something else has happened. So I can see where it gets called a waiver. But it isn't the same thing. I understood, Your Honor. But that is an exception to what was mentioned previously at the initial part of this argument, which was what? Which is that this particular alien is permanently inadmissible unless this particular alien can fit within this exception. And it's our contention that petitioners simply cannot fit within this exception. And because this alien cannot fit within this exception, because she is a recidivist violator of the immigration laws, that she cannot now seek adjustment of status under 245I. And if there are no further questions, that concludes the Attorney General's presentation. Thank you, Counsel. And, Mr. Cruz, you may have a minute for rebuttal. Thank you, Your Honor. I'd like to start by explaining a little bit more the Board's power that's being exercised here. This Court has actually considered this non-protunct authority or retroactive approval of I-212 waivers as recently as last year in Corona-Mendez. It was under a different context, but it was the same type of waiver, an I-212 waiver, and it cited with approval the BIA's case in Garcia-Lenares in 1996, which also explained and reaffirmed the Board's non-protunct authority to grant I-212 waivers to aliens in the United States. Is Corona-Mendez cited in the briefing? Yes, Your Honor, it's in my opening and my briefs. Okay, thank you. And so the Ninth Circuit had no problem in the Board using this as necessary authority. The Court rejected the waiver on other grounds, but in terms of the Board's authority for using that power, that was not disapproved of by the Court. What? I'm sorry? I was just going to say other courts also, the cases that are cited in my response to the government's 28-J letter also have approved of the agency's non-protunct power post-1996 amendments. My concern remains with what is it an agency has to do, what hoops does it have to jump through to change its statutory interpretation? And to me it seems clear that its interpretation for a long period of time of identical wording was to allow this non-protunct power. And now it says, no, we were wrong about that. I mean, it doesn't say that explicitly, and I guess that's my question to you. In a more generic sense, when there is an agency to which we must give deference in its interpretation of a statute, what does it have to do by way of explanation to alter its previous interpretation, which it is otherwise entitled to do? What does it have to say or do? Well, Your Honor, I believe the standard is basically providing a reasonable explanation of departing from their prior interpretation. So what's missing, I take it, in your view, from the BIA's decision here, it explains how it reaches the result, but it doesn't really go back and discuss the past or how it's dealt with this language in the past. And that's, in your view, the missing link. Yes, Your Honor. Theoretically, even if we sent it back for further explanation, they could certainly come up with one, presumably. Well, Your Honor, presumably, yes, anything could happen. But that's something that the Board hasn't discussed in this decision, and so I could only speculate. But I'd also like to address the cite to Congress's amendments in providing exceptions to those certain Haitian and Nicaraguan and Cuban applicants where they specifically stated that those individuals could seek an I-212 waiver while inside the United States. I mean, I think that for a couple of reasons that shouldn't really be persuasive in this case. One, these are piecemeal legislations. The Immigration Act is amended every year for some reason or another, and there's no evidence in the legislation where Congress specifically disapproved of any non-pro-tunk authority in other cases. It was specifically limited to those Haitians and Nicaraguans and Cubans for humanitarian reasons. But furthermore, what basically counsel from the government is arguing is that the court should take a negative inference in that if Congress stated that these individuals could apply here, then all other individuals are excluded. But I think that when we're dealing with longstanding administrative practices of almost 70 years, it can't simply rely on the principle of expressio unius. I mean, I think that courts have consistently cautioned use of this statutory construction principle, especially when we're dealing with agency interpretation. And so I would say that that really doesn't have much of a persuasive effect in these proceedings. Thank you, counsel. Thank you. We appreciate both counsel's arguments. The case is submitted.
judges: Benitez, Graber, Smith M.